Good morning, Your Honors. Matt Larson of the Federal Defender's Office for Ms. Topilina. Your Honors, on the particular and unusual record... Let me just ask one thing so I can understand. If a hearing was required, is it your position that restitution cannot be ordered? I mean, suppose we agree with you that there should have been a hearing. Remand to have a hearing. What's going to be your position? At the hearing, the burden would be on the government to prove the fraud by... But you're not going to take the position that was taken prior to the hearing, that it's not within the 90 days or whatever? Oh, if it were remanded, it would be assigned to my colleague who handled it in the trial court. I don't know whether she would reassert that objection or not. Aren't you in the same office? I'm sorry? Aren't you in the same office? Assuming that she would reassert the objection, the court would rule on it. And if the court overruled the objection, there would be a hearing. And there would be the government's burden to proffer evidence, proving by preponderance that these transactions were affected by fraud. Okay. And then my second question is very simply, is there a dispute as to the amount of the restitution? The valuation of the annuity and the condo, there's no dispute as to the value of that. The dispute is whether the transfers were affected by fraud. If they were affected by fraud, then restitution would be appropriate. But if the government cannot meet its burden of proving the fraud, then restitution would not be appropriate. If the court would like me to continue with my argument, I will. Otherwise, I'll reserve the rest of my time for rebuttal. No, you may continue with your argument. Certainly. On this particular and unusual record, Your Honors, there was at least good cause to excuse Ms. Topolina for her belated objection to the allegation of fraud. From the very start, Your Honors, all of the parties understood that matters of restitution were going to be addressed at a post-sentencing restitution hearing to happen within 90 days of the sentencing. The probation office said a deferred restitution hearing has been recommended. The government said the court should defer determination of restitution so the parties can submit their respective positions. And then at sentencing, the district court, she said, I haven't thought about this meaningfully. The party said we haven't either. The court then calendared a hearing to happen in May. But if there's no dispute about the amount, why isn't the admissions in the pre-sentence report enough to establish fraud? Respectfully, Your Honor, they aren't admissions. Ms. Topolina, as also is in the record, carefully worded the plea agreement to deny any concession or admission of fraud. The plea agreement did not admit fraud. The plea hearing did not admit fraud. In the hearing and in the plea agreement, all it says is that these properties were transferred to Ms. Topolina. The question is, by not responding to the pre-sentence report, not denying the statements there, does that constitute an admission? We would first say no under the unusual facts of this case, Your Honor. And secondly, if it does, there's good cause for the belated objection. And let me explain, if I may. At the first opportunity that the defense had to address this issue, namely the post-sentencing restitution briefing, we denied this allegation of fraud. We said the government has not yet borne its burden of proof. It has not proffered sufficient evidence proving that these transactions were fraudulent, and therefore a restitution order would be inappropriate. We denied this at the first opportunity that we had to do so under the expectation, which we submit was reasonable, that restitution matters were going to be addressed later. Restitution was not meaningfully addressed in the sentencing papers. The restitution came afterwards. And then when we filed the restitution brief, we denied this allegation of fraud, saying that no evidence of the fraud had been proffered. So, Your Honor. Help me out also, and I could be wrong. I think of relevant conduct as if you're dealing drugs and relevant conduct would be dealing other drugs. I'm not clear from this, but it seems like this is more than relevant conduct. The property which was not disclosed in the bankruptcy proceeding is the very property in question here. I'm not sure that affects anything. I just want to make sure I understand. It's a little convoluted, and I want to clarify it. What happened in the sentencing papers as to loss? Initially, the probation office and the government said the loss should be calculated based on the value of the annuity and the value of the condo. The defense said that's the wrong measure of valuation. The measure of loss should be the amount of debt that the bankruptcy court discharged. The government reversed its position, agreed with us that that was the proper measure of loss, and the district court similarly agreed that that was the proper measure of loss, the debt that was discharged by the bankruptcy court. Now, that concerned the bankruptcy creditors, whom C.M. was not one of. When it came to talk about the condo and the annuity, that happened in the restitution briefing, where we said the government hasn't proffered evidence that this was a fraudulent transaction. I would certainly say, in a perfect world, to be absolutely crystal clear, the defense might have initially said in the first sentencing paper, oh, by the way, we're reserving our objections about the fraud until later, because we understand that these are going to be taken up later. That would have been the preferred practice. But it wasn't a waiver, Your Honor, and we cite the Chica case about that. Secondly, even if it was a failure to timely object, there was good cause to excuse this late objection, and the good cause is namely the record in this case. Everyone's understanding, including the district court, was that the restitution matters would be decided later at the restitution hearing, and therefore, when we filed our restitution brief, we raised the objection. We said the government hasn't proffered evidence of fraud, and indeed they haven't. What's here is an allegation of fraud, an allegation in the PSR made by the probation office that these were fraudulent transactions. No evidence was proffered. No affidavit from CM or her estate saying that they were fraud was proffered. No affidavit from a doctor was proffered saying that CM in fact had Alzheimer's disease and in fact was laboring under Alzheimer's disease when she effected these transfers. No such evidence was proffered. Now, perhaps if that evidence had been proffered, there would have been no need for a hearing, but that's not what happened here. There was a finding by the probation officer. Which was not objected to by... It was objected to in our restitution briefing. Yes, but not at the time. That is correct, not at the time. But we submit there was good cause if this court finds... I mean, our position is that we didn't need to object initially given the record here. Your position is not unreasonable, I understand that. Thank you very much, Your Honor. And... Do you want to save your time for Rebecca? Thank you, Your Honor. Yes. May I please record? Monica Tate for the United States. There was no due process violation in this case because the defendant had numerous, meaningful, timely opportunities to state her case that CM was not her victim, that she had not defrauded CM. And she took almost none of them. But when she did take that position, rather than what my colleague said, she actually did not deny the facts. She just said that those facts didn't add up to fraud. But she's never in the district court denied those facts that were stated in the PSR and also some of the facts that the government brought up in its restitution briefing relating to the fraud against CM. So the district court faced with... Briefing is one thing. You know, a hearing is another. The defendant never indicated that the defendant was going to bring any evidence to that hearing, that the defendant was going to testify to that hearing. So that hearing was a hearing on uncontested facts, and the district court was not wrong, indeed did not err and did not abuse its discretion to decide on the basis of uncontested facts that it did not need to hold a hearing. And that's why there's no error in this case. The defendant had many opportunities, as I indicated, to respond here. And the sentencing pleadings themselves, the government laid out its entire case on restitution, leaving out only the dollar amounts that were going to be involved. That was in the government's response to the defendant's sentencing position. When the defendant filed her sentencing position, it appeared to the government that the defendant was not contesting the fraud against CM because the defendant had raised none of those issues in her sentencing position, even though CM was all over the PSR and indeed was raised to a small extent in the government's opening sentencing position. And then we got to the sentencing hearing, and Judge Morrow indicated that she was finding all the facts in the PSR to be true, and the defendant stood silent, and so did her attorney, and didn't say she was reserving... There would be a restitution hearing? There was certainly an understanding that there would be a restitution hearing, but the district court took pains to point out that in its sentencing decision, it was considering the fraud against CM as being aggravating, that the defendant had taken annuities, a condo, and also bought a car with the money that the defendant had taken from CM. Was the basis of the bankruptcy fraud the nondisclosure of the assets taken from CM? I'm not clear on that. Yes, indeed, it was, and so the bankruptcy fraud... It's really more than relevant conduct. It's very closely tied, yes. The defendant could not disclose the defendant had those assets in order to get her fresh start in bankruptcy, because had she done so, I believe the bankruptcy trustee would have found out that she had acquired those by fraud from a person that she didn't list as a creditor. And so it was integral to the bankruptcy fraud offenses, including the very one the defendant chose to plead guilty to, which is the one involving CM's annuities. Am I correct in inferring that the defense position probably would be that if this were remanded, there can be no restitution at all because the hearing was held more than whatever the statutory period is? I mean, that was the objection before. I mean, it seems to me that it's... And apparently the lawyer isn't here who could answer that question. I would think that what the defense would say would be no restitutions allowed because the time period's expired. Well, I think at this point that would be an about-face, because in the opening brief... It would be an about-face. In the opening brief, the defendant did indicate that it was seeking a remand to a different district court judge for the very purpose of determining the facts of the fraud against CM, suggesting that the defendant's not going to argue if there were a remand, which there should not be, suggesting the defendant could not be arguing that it would be... that there's no restitution here because we've gone beyond that 90-day period. So right here, I think the court has pointed out the gazemanship that was at issue here. The defendant objected below to having a hearing at all after the 90 days. And now in the opening brief, the defendant is suggesting that the defendant wants that hearing after all. And I think that's... Would you agree that if the amount of the loss was disputed, the defendant would be entitled to a hearing? I mean, that was never adjudicated. The defendant would be... Meaning, if we were back in time at the district court, let me make sure I understand. Back in... Apparently not disputing. I'm just trying to... It seems to me the clearly unresolved issue until after the sentencing was the amount of the loss. But if the amount of the loss is not being contested, that's academic. But my question is, if it was disputed, would the defendant not be entitled to a hearing to dispute the amount of the loss? Well, if the defendant had come in its restitution brief and had submitted any factual challenge at all to the government's restitution position, had denied that the acts in the PSR occurred, had denied the government's proof of the dollar amount, I think that the district court would have had a dispute on its hand, a factual dispute, and a hearing would have been appropriate at that time. I just wanted to mention another thing. My colleague indicated that there was no evidence of fraud. I think that's not correct. I mean, the evidence is certainly what's stated in the PSR. In addition, the government, in our excerpts of records, we submitted our position as well as a declaration, not all the exhibits. But we did prove up some aspects of the fraud in terms of proving the dollar amounts of loss. For example, we showed how defendant was the notary on the transaction that transferred away the Hill Park condominium from CM to CM and her doctor. That defendant had transferred that property after CM's family had taken her back to Japan. The property gets transferred from CM and the doctor to this gentleman, VG. VG, who says the defendant at all times controlled the Hill Park property in his name. He's a straw, and he admits that. And so those were some of the other facts that we put in in our restitution papers that the defendant never contested. And looking at the court also mentioned in the questioning my colleague that there was a finding by the district court. And there were findings. The district court specifically indicated to the parties that she was adopting the factual findings of the PSR because there had been no judgment. She even indicated some discontent with the CPRA because of the nature of the underlying fraud, I think. Maybe I'm misremembering, but I think there was a C plea, and I think the judge said I'm concerned about the nature of the fraud, but nevertheless I'm going to accept the plea. Yes, Your Honor. And going back to the plea colloquy, the district court told the defendant, okay, I have your binding plea in front of me, but I'm going to order a PSR, and I'm going to look at the facts in that PSR to decide whether I'm going to accept your plea. And so then moving forward to sentencing, the district court said CM had Alzheimer's disease and indicated that the district court believed that was a true admitted fact. And the district court then said, but on the other hand, there are mitigating factors about this defendant, although her conduct is aggravating. I mean, I submit that the only aggravating part of this bankruptcy fraud is the fact that the assets were taken from an elderly lady with Alzheimer's disease. And in addition, the fact that those same assets were then involved in the tax evasion and were also to some tangential extent involved in the aggravated identity theft, because in count 10, the defendant had pled guilty to an offense and agreed that she had committed a mail fraud as a predicate act involving, again, the Hill Park property taken from CM. Do you think that the motivating factor for the district judge in ruling on the papers rather than holding a hearing was trying to avoid the legal issue about whether the statutory period expired, you know, and or before that many days, there's no issue? The district court made that 90-day deadline definitely. The district court made its decision in time, and I think that there's no denying the district court specifically mentioned that in light of the record here of undisputed facts, and particularly where the defendant objects to holding a hearing beyond the 90 days, the court finds it appropriate to decide the matter on the papers without a hearing. Is there any – frankly, I don't know of any. It seems to me the – is there any basis if we were to remand or remand to a different district judge, which frankly institutionally as a district judge, I would find somewhat insulting. I just don't know of anything that the district judge did which indicated bias against the defendant. I agree, Your Honor. I don't know of anything the district court did either. The only argument raised in the opening brief was really that the district court had seen the PSR, but any new district court is going to see the PSR. Also, the district court had made a finding, but if this court were to reverse, which I would argue it should not, the district court had made this finding about the Alzheimer's disease. I'm positive that the seasoned, experienced district court judge would be able to put any of that out of her mind and be fair and impartial. I don't think there's any reason. Is a finding of Alzheimer's disease necessary to the finding of fraud? No. I don't believe it is, but I think it's helpful to us. I believe that it was made. Unless the court has any questions. Thank you. No questions here. Judge Motz, just to answer your question, our position is that the amount of loss is zero because there's no proof of fraud in this case. Oh, I understand that. Yes. Thank you. Now, the government says that we never denied the fraud. I think that's a misreading of the record. In our restitution brief, we said the government has not yet borne its burden of proof, and the allegations simply that CM was purportedly suffering from Alzheimer's, that the defendant was involved in a transaction, and that CM's relatives then sought to reverse the transaction does not prove that the transaction was fraudulent. Even if she didn't have Alzheimer's, can't one infer fraud from the nature of the relationship, the age of CM, and everything else? I mean, Alzheimer's helps the government, but I don't see it being necessary to the government. No, I don't think it's necessary either. I would agree with Your Honor's characterization. She took advantage of an older woman with whom she had... No, we deny those facts. We deny that she took advantage of her or swindled her or defrauded her in any way. Well, if she obtained a transfer of property from an older woman... That's true, and under this court's law... They had a closed relationship. Yes. They were longtime friends, and under this circuit's law, the government has to prove that the transaction was fraudulent if it wants to sustain a restitution order. Now, we said in our brief that we denied this allegation, and then the government, in its reply brief, this is the one that they filed on the Friday before the Monday hearing, they said, oh, the defense is not really denying the fraud here. Now, defense counsel on Monday was ready to dispute that, as she explained in the declaration that she subsequently filed. If the hearing had happened on Monday, she was going to clarify at the hearing to make plain that, in filing that opposition, Ms. Topolina was indeed objecting to all the references in the PSR which alleged fraud. The record here, Your Honors, is that everyone thought restitution would be addressed at a post-sentencing hearing. Therefore, our arguments were made in the post-sentencing restitution brief. We denied the allegation of fraud. The government's burden was then to proffer evidence of the fraud, affidavits from CM or her estate or a doctor, some kind of evidentiary proof other than a probation officer's allegation. On behalf of your office, now the lawyer who will handle it below, are you prepared to say that if there is a remand, the argument will be waived that the restitution hearing itself was untimely? I personally would waive that argument, Your Honor, yes. On behalf of your office? I don't know that I can bind my office, but if I were handling the case... Oh, you're an agent of your office, right? I wouldn't reassert the argument because I think under Dolan and under the weird facts of this case, there can be a hearing at this point after the 90 days. That's my personal view. I think the hearing should happen because the government hasn't carried its burden of proof in this case. The result of the proceedings below is that we have a restitution order that's not supported by evidence proving fraud. Your answers remind me of the only Supreme Court argument I ever had when I was just out of law school and Archibald Cox was the Solicitor General and Felix Frankfurter was on the Supreme Court and Cox had clerked for Felix Frankfurter. And Justice Frankfurter asked Mr. Cox, is it the position of the government that this was inconsistent with the orderly administration of justice? And Mr. Cox said, I can't answer that question for the government. And Felix Frankfurter said, Well, Mr. Cox, you're the Solicitor General, but you're an officer of this court. What is your position as an officer of the court? And Cox said, Well, as an officer of the court, I have to say that it was not consistent with the orderly administration of justice. Justice Frankfurter said, Thank you, Mr. Cox. And a week later, we got a postcard that said it was reversed in view of the confession of error by the Solicitor General. You're in somewhat the same position. I guess when you say my personal answer, you're saying my answer as an officer of the court would be that it would not be the proper course for your office to raise that defense. Is that right? Yes, Your Honor. All right. Thank you, Your Honors. That case just argued is under submission.
judges: Motz, Reinhardt, Gould